THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TIMOTHY J. NEWMAN, | CASE NO. C16-1252-JCC |
| Plaintiff, | ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | |
| Defendant. | |

This matter comes before the Court on Plaintiff Timothy Newman's objections (Dkt. No. 25) to the report and recommendation (Dkt. No. 24) issued by the Honorable Theresa L. Fricke, United States Magistrate Judge. Having reviewed Judge Fricke's report and recommendation, Newman's objections, the Commissioner's response, and the relevant record, the Court OVERRULES the objections (Dkt. No. 25) and ADOPTS the report and recommendation (Dkt. No. 24) for the reasons set forth herein.

## I.    BACKGROUND

Newman suffers from bipolar disorder. *See* AR 20–23. On September 22, 2009, Newman filed for disability insurance benefits and supplemental security income benefits, alleging disability beginning in 2006. AR 16. In 2012, Administrative Law Judge (ALJ) Joanne Dantonio found Newman not disabled. AR 57.  Newman appealed and the Appeals Council remanded the

1  case to a new ALJ. AR 63–65. On remand, ALJ M. J. Adams[1] considered: (1) Newman's

2  medical records; (2) reports by examining physicians Dr. Anselm Parlatore, Dr. Sylvia Thorpe,

3  and Dr. W. Douglas Uhl; (3) reports by treating physician Dr. Lori Rubens; (4) Newman's

4  function report; (5) Newman's ex-wife's function report; (6) Newman's testimony and demeanor

5  at his hearing; and (7) the testimony of a vocational expert. AR 22–31. ALJ Adams denied

6  Newman's application, finding Newman's disability was not severe enough to prevent him from

7  working. AR 20–22.

8      The Appeals Council denied Newman's second appeal, making the ALJ's decision the

9  Commissioner's final decision. AR 7–9. Newman then appealed to this Court. (Dkt. No. 3.)

10  Judge Fricke concluded that the ALJ had not erred and recommended that the undersigned affirm

11  the ALJ's decision. (Dkt. No. 24.) Newman objected to Judge Fricke's report and

12  recommendation, arguing that the ALJ: (1) erred in finding Newman not credible; (2) improperly

13  weighed Dr. Parlatore's medical findings; and (3) improperly weighed Dr. Rubens's medical

14  findings.

15  **II.   DISCUSSION**

16      **A.   Legal Standards**

17      A district judge reviews objections to a magistrate judge's report and recommendation *de*

18  *novo*. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the recommended

19  disposition; receive further evidence; or return the matter to the magistrate judge with

20  instructions. *Id.*

21      A district court may disturb the Commissioner's decision to deny Social Security benefits

22  "only if it is not supported by substantial evidence or based on legal error." *Martinez v. Heckler*,

23  807 F.2d 771, 772 (9th Cir. 1986). Substantial evidence is "more than a mere scintilla, but may

24  be less than a preponderance." *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). Substantial

25  evidence means "relevant evidence that, considering the entire record, a reasonable person might

26

---

[1] For the remainder of this opinion, "the ALJ" will refer to Adams, not Dantonio.

1   accept as adequate to support a conclusion." *Id.* When the evidence before an ALJ is subject to

2   multiple rational interpretations, this Court must defer to the ALJ's decision. *Batson v. Comm'r*

3   *of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

4        **B.      Newman's Credibility**

5        The ALJ found that Newman was not credible and gave limited consideration to his

6   testimony. AR 23–25. The ALJ based his credibility assessment on: (1) Newman's drug-seeking

7   behavior; (2) evidence of malingering and poor effort during testing; and (3) inconsistencies in

8   testimony about social functioning, domestic chores, and Newman's attention span. AR 24–25.

9   Newman objects to Judge Fricke's finding that this credibility determination was appropriate.

10  (Dkt. No. 25 at 6–10.)

11       The ALJ is responsible for determining the credibility of claimants and witnesses. *See*

12  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). When an ALJ makes a credibility

13  determination, general findings are insufficient; instead, "the ALJ must identify what testimony

14  is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81

15  F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). "The ALJ may consider at least the

16  following factors when weighing the claimant's credibility: 'claimant's reputation for

17  truthfulness, inconsistencies either in claimant's testimony or between [his] testimony and [his]

18  conduct, claimant's daily activities, [his] work record, and testimony from physicians and third

19  parties concerning the nature, severity, and effect of the symptoms of which claimant

20  complains.'" *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) (quoting *Light v. Soc.*

21  *Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)). When a record of malingering exists, the ALJ

22  need not provide "clear and convincing" reasons for rejecting a claimant's testimony. *Lester*, 81

23  F.2d at 834. Additionally, the Court need not uphold all of the ALJ's bases for his or her

24  credibility decision, as long as there is "substantial evidence" to support the ALJ's final

25  conclusion on credibility. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

26  2008).

1    <u>1. The ALJ's Findings</u>

2    Since 2006, the alleged beginning of the disability, Newman has been examined by

3    multiple physicians with somewhat conflicting diagnoses and conclusions. *See* AR 385–95, 462–

4    91, 509–83. Newman has experienced a number of manic episodes, causing him to be

5    psychiatrically hospitalized three times. AR 21. During those periods, he was inconsistently

6    taking bipolar medication. AR 22–29. Although Dr. Rubens, his treating physician, reported that

7    Newman was "markedly impaired" in 2012, Dr. Rubens has managed Newman's condition

8    through medication and he has not had a manic episode since late 2011. AR 468–91, 574–83.

9    More recently, examining physician Dr. Thorpe examined Newman and noted that he gave

10   inconsistent effort and showed signs of "possible malingering." AR 524–25.

11   The ALJ found Newman non-credible in part because he has a history of drug use and

12   possible drug-seeking behavior. AR 24. While Newman was experiencing his manic episodes, he

13   was also prescribed Adderall. AR 255–60. There is evidence that he abused the drug and sought

14   it out when his physician denied him an additional prescription. AR 24, 270–76, 309–10, 408–

15   17. When Newman was hospitalized, he told his doctors that Adderall helped him sleep. AR 255,

16   262. However, his doctors also noted that an additional episode was spurred when he started

17   taking Adderall again. AR 255, 262. Doctors have recommended that Newman should not be

18   prescribed Adderall. AR 255–60. The last record of Newman seeking Adderall was in early 2011

19   upon his last hospitalization. AR 426. Newman has admitted to marijuana use and tested positive

20   for the drug even when denying use. AR 255, 427, 385–89. Additionally, in 2012, a pharmacist

21   reported Newman for suspected abuse of Ambien when he filled prescriptions for 90 pills in 60

22   days. AR 24.

23   The ALJ also observed inconsistencies in Newman's representations as to his ability to

24   function. AR 23–29. For example, in Newman's psychiatric sessions, he noted that he is

25   completely dependent on his ex-wife. AR 510, 531. However, Newman also reported that he

26   does his own shopping, yardwork, and helps take care of his ex-wife. AR 211–14.

1    On appeal, Judge Fricke found the ALJ's determination of credibility was substantially

2    supported by the evidence. (Dkt. No. 24 at 8.) Judge Fricke recommended that the ALJ's

3    findings be upheld. (*Id.* at 11.)

4        2. Newman's Objections

5        Newman contends that the ALJ and Judge Fricke failed to understand how his disorder

6    affects him, which consequently tainted the assessment of his credibility. (Dkt. No. 25 at 7.)

7        *Assessment of Newman's Depression*: Newman first alleges that the ALJ failed to

8    properly assess the medical evidence related to his depression. (*Id.* at 6–7.) As a result, Newman

9    asserts, the ALJ erred in discrediting Newman's statements that were corroborated by medical

10   testimony. (*Id.*) Specifically, Newman argues the ALJ misinterpreted Dr. Rubens's description of

11   his condition as "stable" to mean he was "in remission," when in fact it meant that he was

12   suffering chronic "depression with suicidal ideation." (*Id.* at 8.) Newman contends that his

13   depression still prevents him from engaging in substantial gainful activity. (*See id.*)

14       However, contrary to Newman's assertion, the ALJ did not rely solely on Dr. Rubens's

15   assessment that Newman was "stable" when considering Newman's ability to work. The ALJ

16   considered, among other things, all of Dr. Rubens's treatment notes, Dr. Thorpe's

17   recommendation, Newman's own function report, Newman's ex-wife's function report, and the

18   vocational expert's testimony that Newman could perform substantive work. AR 25–31. The

19   ALJ cited evidence that Newman was no longer experiencing "active mood symptoms" (*i.e.*,

20   manic episodes), was going outside daily, was able to interact with authority figures, and could

21   cook and grocery shop for himself. AR 29. The ALJ was not required to give controlling weight

22   to Dr. Rubens's assessment of Newman where the record as a whole contradicted her findings.

23   Additionally, to the extent Dr. Rubens relied on Newman's own subjective reporting, an ALJ is

24   entitled to give little weight to opinions based on subjective reporting, especially when

25   contradicted by the record. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th

26   Cir. 1999).

*Lack of Motivation*: Second, closely tied to the above argument, Newman alleges that the ALJ erred in finding "lack of motivation" as a valid reason to discount his credibility. (Dkt. No. 25 at 8.) Newman points out that Dr. Rubens attributed "lack of motivation" to the symptoms of his depression, such as "fatigue" and "marked decrease in global functioning." (*Id.*) Newman argues that if the ALJ properly weighed the medical evidence, his lack of motivation would be accounted for and would not be a valid reason to discount his credibility. (*Id.*)

The Court disagrees. If a claimant fails to seek treatment or displays a lack of motivation for improving his or her situation, it is a valid reason for discounting the claimant's credibility. *Cf. Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (holding claimant's failure to seek treatment for symptoms went against credibility). Although Dr. Rubens attributes Newman's lack of motivation and lethargy to his depression, her records also indicate that she regularly recommended that he seek further mental and physical health assistance. AR 532, 533, 534. Newman failed to comply with those requests. *Id.* Additionally, Dr. Rubens's notes indicate that Newman stopped exercising because his exercise bicycle broke. AR 531. Finally, Newman claims that his depression keeps him from performing daily chores, but, as indicated above, he is still able to complete many such tasks. AR 211–14. Consequently, Newman's lack of motivation to improve his situation was a valid reason to question his credibility.

*Weight Given to Dr. Thorpe's Finding of Malingering*: Third, Newman argues that Dr. Thorpe's statements about his malingering were given inappropriate weight. (Dkt. No. 25 at 9.) Newman alleges that a finding of malingering was inconsistent with Dr. Thorpe's other reports that he was more cooperative than not. (*Id.*) Further, Newman says Judge Fricke applied the wrong standard by stating that the ALJ's reliance was "rational" instead of "reasonable." (*Id.*)

Contrary to Newman's argument, Dr. Thorpe's note—that he was more cooperative than not—does not eliminate the fact that she noticed Newman failed to give maximum effort and likely malingered. Failure to give "maximum or consistent effort" is a valid reason for an ALJ to discredit a claimant's credibility. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Further, "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Under *Batson*, if the evidence leads to more than one "rational" interpretation, the Court must defer to the ALJ's findings. 359 F.3d at 1196. It was within the ALJ's discretion to give the greatest weight to Dr. Thorpe's finding of possible malingering.

*Drug-Seeking Behavior*: Fourth, Newman argues that his "drug-seeking behavior" was improperly used to discount his credibility. (Dkt. No. 25 at 8–9.) More specifically, Newman takes issue with Judge Fricke's determination that "there is no indication in the record that the effects of Mr. Newman's mental impairments were responsible for his drug-seeking behavior[.]" (*Id.* at 8; Dkt. No. 24 at 10.) Newman points out that his drug-seeking behavior occurred while he was prescribed Adderall, which is contraindicated for bipolar disorder. (Dkt. No. 25 at 7–8.) According to Newman, the coinciding timeframes of his Adderall prescription, mania, and drug-seeking behavior are indications of a causal relationship. (*Id.* at 9.)

The Court acknowledges that Newman's Adderall-seeking behavior at the very least coincided with his mania, and indeed might have been caused by his disorder. However, Newman has provided no such explanation for his drug-seeking behavior related to Ambien. (*See id.* at 8–9.) In light of the other factors against Newman's credibility, the Ambien-seeking behavior was a valid reason for discrediting Newman.

*Newman's Ex-Wife*: Finally, Newman argues that his relationship with his ex-wife was improperly used to question his credibility. (*Id.* at 9–10.) Newman points out that, because of the cyclical nature of bipolar disorder, it is not "implausible" that he and his ex-wife take care of one another when the other is having a difficult time. (*Id.* at 10.) Therefore, he asserts, this relationship cannot be used to diminish his credibility. (*Id.*)

The Court is sensitive to the unique nature of bipolar disorder and domestic relationships, and Newman makes a salient point that two individuals with bipolar disorder could rely on one another. Ultimately, however, this is not the issue. Rather, the problem is that Newman made

1    inconsistent statements about his own ability to function. The record indicates that Newman

2    claimed to be completely reliant on his ex-wife while she stated their chores were split, and

3    Newman himself admitted to numerous instances where he has been, and continues to be, self-

4    reliant. AR 510, 531, 199–203, 211–14. It is these inconsistencies that provide valid grounds for

5    negating his credibility. *See Thomas*, 278 F.3d at 958–59.

6        In sum, the Court ADOPTS Judge Fricke's finding that substantial evidence supports the

7    ALJ's credibility determination. Newman's objections are OVERRULED as to this issue.

8        **C.    Dr. Parlatore**

9        Newman next objects to Judge Fricke's finding that the ALJ gave proper evidentiary

10   weight to examining physician Dr. Parlatore's medical opinion. (Dkt. No. 25 at 2–4.)

11       If there is conflicting medical testimony, the ALJ is tasked with "determin[ing]

12   credibility and resolv[ing] the conflict." *Thomas*, 278 F.3d at 957. The ALJ must provide

13   "specific and legitimate" reasons for rejecting one physician's opinion over another's. *Id.* The

14   ALJ need only provide "clear and convincing" reasons when rejecting the uncontroverted

15   opinion of a treating physician. *Id.* Additionally, "the ALJ need not accept the opinion of any

16   physician, including a treating physician, if that opinion is brief, conclusory, and inadequately

17   supported by clinical findings." *Id.* "A physician's opinion of disability 'premised to a large

18   extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded

19   where those complaints have been 'properly discounted.'" *Morgan*, 169 F.3d at 602 (citing *Fair

20   v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).

21       1. The ALJ's Findings

22       Dr. Parlatore examined Newman on January 13, 2012 and November 26, 2013. AR 462-

23   66, 509-14. During the first examination, Dr. Parlatore observed symptoms such as akathisia,

24   akinesia, dystonia, dysphagia, tardive dyskinesia, flat affect, gloomy mood, and depression. AR

25   462. Dr. Parlatore also performed a "mini mental status evaluation." AR 463–66. There is no

26   evidence that Dr. Parlatore reviewed Newman's treatment records. *See* AR 27, 463–66. Dr.

1  Parlatore found that Newman had marked limitations in all areas of functioning. AR 465. On

2  evaluating Newman a second time, Dr. Parlatore found again that Newman had marked

3  limitations in all areas of functioning. AR 512. However, Dr. Parlatore did not note any of the

4  previous physical symptoms (*e.g.*, tardive dyskinesia), and he again performed only a "mini

5  mental status evaluation." AR 510–14. Dr. Parlatore relied primarily on Newman's subjective

6  self-assessment, including statements that he relied 100% on his wife and had no history of

7  substance abuse. *Id.* Dr. Parlatore also did not review any of Newman's medical history for the

8  second evaluation. *See id.*

9       The ALJ accorded little weight to Dr. Parlatore's examinations. AR 27–28. He noted that

10  Dr. Parlatore's medical findings were contradicted by: (1) Newman's "longitudinal presentation

11  during routine appointments"; (2) the results of mental testing performed by examining physician

12  Dr. Uhl; (3) the results of objective psychometric testing done by examining physician Dr.

13  Thorpe; and (4) the lack of medical records corroborating the physical symptoms noted by Dr.

14  Parlatore. *Id.* The ALJ also noted that Dr. Parlatore's mini mental status evaluation was less

15  comprehensive than Dr. Thorpe's testing and that Dr. Parlatore's report relied too heavily on

16  Newman's subjective complaints. *Id.* Having already found Newman lacking credibility and that

17  he possibly malingered in other appointments, the ALJ determined Dr. Parlatore's opinion

18  should be given little weight. *Id.*

19       Judge Fricke found the ALJ properly discredited Dr. Parlatore's medical evidence. (Dkt.

20  No. 24 at 6–7.) Judge Fricke noted that Newman's credibility and contradictory medical findings

21  were both valid reasons to discredit Dr. Parlatore's medical opinion. (*Id.* at 5–6.)

22       2. Newman's Objections

23       *Legal Standard Applied*: Newman argues that Judge Fricke applied the wrong legal

24  standard when reviewing the ALJ's determination. (Dkt. No. 25 at 2.) Newman asserts that the

25  ALJ needed to provide "clear and convincing" reasons for giving Dr. Parlatore's opinions little

26  weight. (*See id.*) He argues that the ALJ did not provide either "clear and convincing" reasons or

1    "specific and legitimate" reasons. (*Id.*) For example, Newman notes, the ALJ did not cite to the

2    record in the same way that Judge Fricke did. (*Id.*) Newman further refers to Judge Fricke's

3    findings as post hoc rationalizations, which he asserts are not allowed. (*Id.*)

4        Dr. Parlatore was not a treating physician, and his findings were contradicted by Dr.

5    Thorpe's. AR 462-66, 509-28. Therefore, the ALJ did not need to provide "clear and

6    convincing" reasons for giving his opinion little weight. *See Thomas*, 278 F.3d at 957. Instead,

7    the ALJ needed to provide "specific and legitimate" reasons for his consideration of Dr.

8    Parlatore's opinion, which he did. *See id.*; *see also* AR 28. The ALJ noted Dr. Parlatore's

9    findings were based primarily on Newman's subjective complaints and that Newman lacked

10   credibility. AR 27–28. Additionally, this Court is allowed to consider the record as a whole when

11   reviewing the ALJ's findings. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

12   Therefore, when Judge Fricke directly referenced the ALJ's findings and corresponding record

13   citations, her reasoning was not inappropriate.

14       *Inpatient Treatment Records*: Newman further objects to the use of medical findings that

15   immediately followed inpatient treatment to contradict Dr. Parlatore's findings. (Dkt. No. 25 at

16   3.) Newman reasons that mental health varies over time and that his mental health immediately

17   following inpatient treatment is not a representative sample, because improvements are expected

18   in such a structured environment. (*Id.*) Tied to this argument, Newman asserts that the ALJ

19   should have considered his abilities to function and comply with medication pursuant to the

20   Administrative Message "Policy Reminders for Evaluating Schizophrenia Cases." (*Id.*) Newman

21   also argues that the record lacks evidence that his condition ever improved to the degree that he

22   could maintain substantial gainful activity. (*Id.*)

23       The Court is unconvinced by Newman's arguments. While the Court is cognizant of the

24   cyclical nature of bipolar disorder, the ALJ gave Dr. Parlatore's opinion very little weight for

25   many reasons, including the fact that Dr. Parlatore lacked material information regarding

26   Newman's drug use and relied substantially on subjective reporting from Newman—whom the

ALJ found to be a malingerer. AR 27–28.

    In regard to the "Policy Reminders for Evaluating Schizophrenia Cases," Newman offers no explanation why the Court should consider Newman's behavior within this framework. (*See* Dkt. No. 25 at 3.) Regardless, Newman's argument fails. Newman fails to connect the Administrative Message to his position in any substantive way. (*See id.*) Also, an Administrative Message is an internal guidance tool that does not carry the force of law. *Rodgers v. Colvin*, 2015 WL 636061, at \*11 (E.D.N.C. Feb. 13, 2015); *see also Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000) (holding Social Security Administration's internal manual does not carry the force of law because it does not "prescribe substantive rules" and fails to "conform to certain procedural requirements").

    *Type of Screening Performed:* Newman also argues that the ALJ erred by discounting Dr. Parlatore's findings because he did not do a more in-depth screening. (Dkt. No. 25 at 2–3.) According to Newman, Dr. Parlatore specifically chose not to do such a screening because the medication would have prevented him from effectively taking psychometric testing. (*Id.*) Newman further asserts that the ALJ erred in discounting Dr. Parlatore's report as contradicted by Dr. Thorpe and Dr. Uhl, because those opinions were not actually valid contradictions. (*Id.* at 3.) Specifically, Newman points out that Dr. Thorpe "doubt[ed] that Newman would be employable at this time" and that Dr. Uhl's opinion was given little weight. (*Id.*)

    As noted above, Dr. Parlatore was not a treating physician, and his findings were contradicted by Dr. Thorpe, who was able to conduct a full psychometric test. AR 462-66, 509-28. Although physicians in this case agreed that Newman may not be able to work, the medical evidence was still conflicting; for example, Dr. Parlatore and Dr. Thorpe came to starkly different conclusions regarding Newman's mental functioning. *See* AR 462–66, 509–14, 524-25. The final determination of disability and ability to work is at the ALJ's discretion. *See* 40 U.S.C. § 404.1520. The ALJ uses medical opinions as evidence to help make his or her disability determination. *Id.* It was ultimately the ALJ's job to consider the evidence and determine if

1  Newman was capable of working, regardless of whether a doctor disagreed.

2      *Significance of Malingering:* Finally, Newman argues that the ALJ's finding of possible

3  malingering is relevant only to his effort, not to his veracity when examined by Dr. Parlatore.

4  (Dkt. No. 25 at 3.) The Court reiterates that it may draw all reasonable inferences from the record

5  as a whole. *See Sample*, 694 F.2d at 642. As noted above, Newman's lack of credibility was

6  based on the entirety of the record and therefore the ALJ validly discounted Newman's

7  subjective reporting to Dr. Parlatore.

8      In sum, the Court finds substantial evidence to support the ALJ's determination that Dr.

9  Parlatore's medical opinion should be given little weight. Consequently, the Court ADOPTS

10  Judge Fricke's report and recommendation as to this issue.

11      **D.**    **Dr. Rubens**

12      Finally, Newman objects to Judge Fricke's finding that the ALJ gave proper evidentiary

13  weight to Dr. Rubens's medical opinion. (Dkt. No. 25 at 4–6.)

14      "The ALJ is responsible for determining credibility, resolving conflicts in medical

15  testimony, and for resolving ambiguities." *Reddick*, 157 F.3d at 722. Additionally, as noted

16  above, if there is conflicting medical testimony, the ALJ need only provide "specific and

17  legitimate" reasons for crediting a non-treating physician's opinion over a treating physician's.

18  *Thomas*, 278 F.3d at 957.

19      <u>1. The ALJ's Findings</u>

20      Dr. Rubens was Newman's treating psychiatrist from March 2011 through at least

21  November 2014. AR. 467–91, 529–83. Dr. Rubens provided records from each visit, as well as

22  two reports specifically for Newman's disability application: one in 2012 and one in 2014. AR

23  468, 574–83. In 2012, Dr. Rubens opined that Newman's "mood and cognitive function

24  remain[ed] markedly impaired despite active and aggressive pharmacologic treatment of his

25  bipolar disorder." AR 468. Dr. Rubens's 2014 report also indicated that Newman lacked

26  essential skills necessary to work. *See* AR 574–83. However, Dr. Rubens's records also showed

that, when medicated, Newman does not experience manic episodes and his condition has

improved over time. AR 467–91, 529–83.

The ALJ found "the claimant has mental limitations even when he complies with

treatment, but not to the extreme degree assessed by Dr. Rubens, especially considering she

never administered formal mental status or psychometric testing." AR 27–28. Therefore, the ALJ

gave little credit to Dr. Ruben's reports because Newman had a history of malingering and

objective testing showed he had average intellectual functioning. AR 27–29. Also, the ALJ noted

that Dr. Rubens's opinion was contradicted by her own longitudinal treatment notes. *See, e.g.*,

AR 476 ("stable re: most functioning"), 473–77 (no risk to self or others), 478 (taking care of

wife and friend), 483 ("no longer panicking, sleeping is okay"), 530 (medication stabilized), 531

(medical side effects diminishing).

Judge Fricke found the ALJ properly discredited Dr. Rubens's medical evidence. (Dkt.

No. 24 at 7–8.) Again, Judge Fricke noted that Newman's lack of credibility, inconsistent

treatment notes, and contradictory medical findings were valid reasons to discredit Dr. Rubens's

medical opinion. (*Id.*)

2. Newman's Objections

*Legal Standard Applied*: Again and for the same reasons discussed above, Newman

asserts that Judge Fricke applied the wrong legal standard when reviewing the ALJ's

determination. (Dkt. No. 25 at 4.) As with Dr. Parlatore's opinion, Judge Fricke applied the

correct legal standard when reviewing the ALJ's findings related to Dr. Rubens's opinion.

*Evidence Relied Upon:* Newman further argues that the ALJ erred in relying on his own

interpretation of Dr. Rubens's treatment notes instead of Dr. Rubens's medical source

statements. (*See id.* at 5.) Newman says the ALJ erred in interpreting progress and improvements

in his disorder, when in reality his disease waxed and waned over 44 months. (*Id.*) Further,

Newman argues the ALJ erred in interpreting the phrase "not currently having active mood

disorder symptoms." (*Id.*) Newman says this phrase meant no manic episodes, not that he was

asymptomatic. (*Id.*) Newman further points out that Dr. Rubens noted he was suffering from chronic depression. (*Id.*)

It is true that a single day should not be taken out of context when considering the mental stability of a patient with bipolar disorder. *See Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011) ("The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated."). But here, the ALJ did not rely on only one specific day. Instead, the ALJ considered the record as a whole and found numerous instances of improvements. *See, e.g.*, AR 473, 475–478, 483, 530, 531. As referenced above, the ALJ's considerations included Dr. Rubens's notes that Newman had not experienced a manic episode in years and that Newman testified to performing some daily chores. AR 27–29.

*Subjective Reporting:* Finally, Newman objects to Judge Fricke's use of evidence of malingering to question the validity of Dr. Rubens's mostly subjective reports. (Dkt. No. 25 at 6.) Newman calls this rationalization post hoc because the ALJ did not directly mention the malingering in discounting Dr. Rubens's medical opinion. (*Id.*) Newman further argues the ALJ erred when he gave the opinion of Dr. Thorpe, an examining physician, more weight than the treating physician, Dr. Rubens. (*Id.*) Again, the Court notes that the ALJ properly found Newman not credible, and Dr. Rubens relied solely on Newman's subjective reporting. Lack of credibility in subjective reporting was a specific and legitimate reason for the ALJ to give greater weight to Dr. Thorpe's objective report. *See Morgan*, 169 F.3d at 602.

In sum, the Court finds substantial evidence to support the ALJ's determination that Dr. Rubens's medical opinion should be given little weight. Consequently, the Court ADOPTS Judge Fricke's report and recommendation as to this issue.

**III.    CONCLUSION**

For the reasons explained herein, the Court OVERRULES Newman's objections (Dkt. No. 25) and ADOPTS the report and recommendation (Dkt. No. 24). The Commissioner's denial of benefits is AFFIRMED.

DATED this 25th day of July, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE